**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL D. HOLMAN, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL NO. 3:16-cv-00215-DGW** |
| | ) | |
| **DR. LARSON, WARDEN ROECKEMAN,** | ) | |
| **SALVADOR GODINEZ, and WEXFORD** | ) | |
| **HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Pending before the Court is a Motion for Summary Judgement filed by Defendants Dr.

Dennis Larson and Wexford Health Sources, Inc. (Doc. 98). For the following reasons, the Court

**GRANTS** the Motion for Summary Judgement.

## FACTUAL BACKGROUND

Plaintiff Michael D. Holman, Jr. filed a complaint on February 29, 2016 to seek redress for

the medical treatment he received while incarcerated at Big Muddy River Correctional Center

("Big Muddy") (Doc. 1). Holman's Second Amended Complaint was subsequently entered (Doc.

53). The Second Amended Complaint contains two allegations relevant to this Motion:[1]

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendant Larson for
> refusing to provide Plaintiff with further treatment for his infected scalp or refer him to a
> specialist (Doc. 25, p. 3).

---

[1] The Second Amended Complaint also contained a third count against Defendants Roeckeman
and Godinez who were subsequently dismissed for failure to exhaust administrative remedies
(Doc. 53, p.3; Doc. 86).

**Count 2:** Eighth Amendment deliberate indifference claim against Defendant Wexford Health Sources, Inc., for maintaining a policy or practice of understaffing and delaying or refusing treatment in an effort to cut costs (*Id.*).

In Defendants' Motion for Summary Judgement they claim that Holman cannot present evidence to prove that Dr. Larson was deliberately indifferent or that Holman suffered substantial harm (Doc. 98, p. 3). Furthermore, they claim that Holman cannot present evidence related to Wexford's alleged unconstitutional policies (*Id.*).

While he was incarcerated at another facility, Holman sustained an initial laceration to his scalp which occurred and subsequently became infected (Doc. 9, p. 2; Doc. 53, p. 2). Within a week of Holman's transfer to Big Muddy, a correctional officer sent him to the health care unit for treatment of his head injury (Doc. 53, p. 2). Holman was seen by Dr. Larson, who prescribed antibiotics for the infection (*Id.*). Several months later, the infection (diagnosed as folliculitis) returned and Holman was prescribed antibiotics again (Doc. 53, p. 3). However, each time Holman finished a round of antibiotics, the infection would return (Doc. 9, p. 2; Doc. 53, p. 3). Holman alleges this occurred up to fifteen times before Dr. Larson finally refused Holman further treatment (Doc. 53, p. 3).[2] Based on Holman's medical records, the Court finds the flare-ups of his folliculitis can be grouped into four events: November 2012, September/October 2013, October/November 2014, and June/July 2015 (Doc. 99-2, pp. 39-86).

Holman additionally alleges that as a result of taking the antibiotics, he sustained irreversible liver and kidney damage (Doc. 9, p. 3; Doc. 53, p. 3). Because he felt the antibiotics were an ineffective solution to his scalp infection, Holman asked Dr. Larson to refer him to an outside specialist to find a solution (*Id.*). As a result of Larson's refusal to refer him, Holman

---

[2] This fact is asserted by Holman in his complaint and further clarified in his deposition but is inconsistent with his medical records (*infra* 7-8).

alleges the infection continued and the entire area of his scalp turned pink and no longer grows hair (*Id.*). For months following, Holman states that his requests to see a doctor or nurse were ignored and he was not given pain medication (Doc. 53, p. 3).

## LEGAL STANDARDS

A court will properly grant summary judgement when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Frost Nat'l Bank v. Midwest Autohaus*, 241 F.3d 862, 867 (7th Cir. 2001). When determining whether a genuine issue of material fact exists, a court will draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Frost Nat'l Bank v. Midwest Autoahaus*, 241 F.3d 862, 867-86 (2001). If no reasonable jury could find in favor of the nonmoving party, then there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Frost Nat'l Bank v. Midwest Autoahaus*, 241 F.3d at 868 (7th Cir. 2001).

The moving party may meet their burden of proving there is no genuine issue of material fact and that they are entitled to judgement as a matter of law by showing "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 323. After the moving party has met their burden, the non-moving party must then prove that a genuine issue of material fact exists by affirmatively citing to materials in the record or showing that the record does not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 567 (7th Cir. 1989). When the nonmoving party fails "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to judgement as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323.

# ANALYSIS

Holman claims that Larson should be liable for deliberate indifference on three grounds: persisting in an ineffective course of treatment, failure to refer Holman to a specialist, and refusal to treat Holman (Doc. 53, p. 4). He further claims that Wexford, the contracting company which provides healthcare services, should be liable for deliberate indifference as a result of their policies of refusing or delaying treatment and understaffing in order to cut costs (*Id.*).

The Supreme Court has found that a violation of the Eighth Amendment may occur when there is a deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim based on inadequate medical care must demonstrate both an objectively serious medical condition and an official's deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Here, the Defendants do not contest that Holman's folliculitis qualifies as a serious medical condition and thus the first element is conceded for purposes of summary judgement.

The second element Holman must establish is that Dr. Larson was deliberately indifferent to his serious medical condition. *Id.* A finding of deliberate indifference is possible when the defendant has a "sufficiently culpable state of mind," "more than mere negligence and approach[ing] intentional wrongdoing." *Arnett v. Webster*, 658 F.3d 742, 750-51 (7th Cir. 2011) (internal citations omitted). Deliberate indifference is a different standard than medical malpractice, as it requires the plaintiff to show that the doctor's treatment decision lacked professional judgement such that no minimally competent professional would have responded in the same way under those circumstances. *Id.* (internal citations omitted). Absent this showing, federal courts will generally not interfere with a doctor's decisions to pursue a certain course of treatment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

<u>Dr. Larson's Treatment of the Plaintiff</u>

Holman's first allegation in regard to his treatment is that Dr. Larson pursued an ineffective course of treatment which failed to produce any results (Doc. 102, p.1; Doc. 53, p. 4). Persisting in a course of treatment known to be ineffective may be grounds for deliberate indifference. *Greeno v. Dailey*, 414 F. 3d 645, 655 (7th Cir. 2005) (citing *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990)). However, in this case Dr. Larson did not persist in the same course of treatment and his treatments were effective. Between November 2012 and November 2014, Dr. Larson's selected treatments successfully cleared Holman's folliculitis three times, including two extended periods of remission (Doc. 99-2, pp. 39-86). While this treatment did not provide the "permanent solution" Holman sought in his grievances, it cannot be said to be ineffective to the point of deliberate indifference (Doc. 53, p. 6-7). In fact, since Holman's release he has sought care by another doctor who has been unable to permanently clear the infection, suggesting it may be an impossible task (Doc. 99-3, pp. 34-35).

Furthermore, Dr. Larson did not persist in one course of treatment, but rather amended his treatments in response to Holman's symptoms. Treatments including cleansing and the antibiotic Doxycycline successfully cleared three of Holman's flare-ups (Doc. 99-2, pp. 42; 61; 76).  In June 2015, Holman experienced a fourth flare up that lasted until his transfer in August. When the flare up did not clear as quickly as expected, a culture was taken of Holman's scalp (Doc. 99-2, pp. 82-83). Based on the results of that culture, Dr. Larson opted for a more aggressive course of treatment, prescribing the more potent antibiotic Septra for a longer period of time (Doc. 99-2, pp. 82-83). Because Dr. Larson's successfully treated the first three flare-ups and adapted his course of treatment for the fourth, a reasonable jury could not find he pursued an ineffective course of treatment.

Holman's next claim is that the antibiotics prescribed by Dr. Larson caused irreversible kidney and liver damage (Doc. 53, p. 3). On July 29, 2015, Holman's lab work indicated an increased level of creatinine, which can indicate liver damage. (Doc. 99-2, p. 203). On August 3, Dr. Larson ordered follow up labs to be performed one week later (Doc. 99-2, p. 85). However, these were not performed before Holman was transferred to Robinson. Once at Robinson, Holman discussed these results with the health unit there and had his follow up labs done on October 19, 2015 (Doc. 99-2, pp. 90; 92). The follow up labs indicate that creatinine had returned to a normal range. (Doc. 99-2, p. 205). Holman provides no other evidence of kidney or liver damage, but rather relies solely on the information contained in his blood test results and a conversation with an unidentified doctor (Doc. 99-3, p. 66:22; 67:5-12). As Holman has failed to establish harm or plead any further facts related to his alleged kidney and liver damage, the claim is insufficient to survive a motion for summary judgement.

Holman also alleges that Dr. Larson's failure to refer him to a specialist or dermatologist in relation to his folliculitis was deliberate indifference (Doc. 54, pg. 4). However, the Seventh Circuit has stated that inmates have no automatic right to consult with outside physicians or specialists. *Randle v. Mesrobian*, No. 98-1590, 1998 U.S. App. LEXIS 21161, at *8 (7th Cir. Aug. 27, 1998). Further, the treatment given to Holman appears to be well within the confines of what is professionally acceptable. The Court notes that the standard treatments for folliculitis generally include antibiotic creams and pills, soothing lotions, not touching the affected area, and keeping the area clean. MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/folliculitis/diagnosis-treatment/drc-20361662 (last visited November 14, 2018). All of these treatments were prescribed by Dr. Larson (Doc. 99-2, pp. 29-86). While Holman may believe these treatments were inadequate, he has presented no evidence to support such a finding (*See* Doc.

99-3, ¶ 62:13-22; Doc. 53, p. 4). Disagreement with a course of treatment alone is not sufficient to prove deliberate indifference. *Greeno,* 414 F.3d at 653.

Holman further alleges that Dr. Larson eventually refused to treat him for his folliculitis (Doc. 53, p. 3; Doc. 102, p. 1). This contention is unsupported by Holman's medical records and deposition. During Holman's tenure at Big Muddy, from November 2012 to August 2015, he was seen by medical staff in the health unit a total of seventeen times for his scalp (Doc. 99-2, pp. 39-86). While Holman was seen by Dr. Larson for his scalp a total of six times during his incarceration, at least one of these visits occurred during each of his four flare-ups (*Id.*) In his complaint, Holman vaguely alleges that Dr. Larson "finally refused to treat me." (Doc. 52, p.3-4). In his deposition, Holman clarified that the refusal occurred the last time he saw Dr. Larson (Doc. 99-3, ¶79:16-25). However, that visit took place while Holman was still taking the antibiotic Septra, and thus he was being treated. Further, the medical records from that visit note his condition was improving (Doc. 99-2, 86-88; Doc. 99-1, ¶28-29). Because Holman was still taking antibiotics and appeared to be responding, there is no evidence to support his claim that Larson refused to treat him. As a result, Dr. Larson is entitled to summary judgement on the issue.

### *Monell* Claims Against Wexford

In his claims against Wexford, Holman alleges that the company maintains a policy or practice of understaffing and refusing or delaying treatment in an effort to cut costs (Doc. 53, p. 4). To recover against Wexford under 7th Circuit precedent, a plaintiff must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Shields v. Ill. Dept't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) (*Citing Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Holman has failed to bring forth evidence in support

of these claims and has merely relied on his bare pleadings (Doc. 99-3, pp. 28-29; 69-70). However, a non-moving party may not rest on their pleadings, but must affirmatively demonstrate a genuine issue of material fact. *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). While Holman's bare allegations may have been sufficient to survive threshold review, the summary judgement stage requires more. *Id.* In light of the absence of even one alleged instance of understaffing or delayed treatment, Holman's claims against Wexford must fail at summary judgment.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgement (Doc. 98), **FINDS AS MOOT** any other pending motions, **DISMISSES** this case **WITH PREJUDICE** and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**So Ordered.**

**DATED: November 16, 2018**

**DONALD G. WILKERSON**
United States Magistrate Judge